United States District Court
Southern District of Texas

**ENTERED**

April 13, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHARON SMITH McLAURIN and COTTRELL McLAURIN, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-0740 |
| WAFFLE HOUSE, INC., | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Sharon Smith McLaurin, Cottrell McLaurin, and Toni Lewis Kelly, bring this action against defendant, Waffle House, Inc., for discrimination in public accommodation based on race in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a ("Title II"); for false imprisonment, intentional infliction of emotional distress, negligent hiring, supervision, training and retention, assault and battery under state law; and declaratory relief under federal and state law.[1]  Plaintiffs seek

---

[1] Plaintiffs' Third Amended Complaint, Docket Entry No. 16. Plaintiff's Third Amended Complaint named two additional parties: Donald Kelly was named as an additional plaintiff, and the Bandidos Motorcycle Club was named as an additional defendant. Since the Bandidos Motorcycle Club has not made an appearance and the court's file does not contain any indication that this defendant has ever been served with a citation and copy of the complaint, Waffle House, Inc. is the only defendant. On May 21, 2015, the court granted Plaintiff Donald Kelly's Motion to Dismiss (Docket Entry No. 39), and on June 11, 2015, Donald Kelly filed a Stipulation of Dismissal with Prejudice (Docket Entry No. 41).

a declaration of rights declaring that defendant's alleged conduct violated their civil rights, temporary and permanent injunctions preventing defendant from discriminating against plaintiffs, compensatory damages in the amount of $8,000,000.00, punitive damages, costs, and attorneys' fees under 42 U.S.C. § 1988 and any applicable state statutes. Pending before the court is Defendant Waffle House, Inc.'s Motion for Summary Judgment (Docket Entry No. 51), and Defendant Waffle House, Inc.'s Motion to Supplement its Motion for Summary Judgment to add Exhibits K-1a through K-2b (Docket Entry No. 53). For the reasons stated below, the pending motion for summary judgment and motion to supplement will be granted, and this action will be dismissed with prejudice.

## I. <u>Undisputed Facts</u>

In the early morning hours of January 22, 2012, plaintiffs and former plaintiff, Donald Kelly, entered the Waffle House restaurant in Baytown, Texas, and sat down at an empty booth. Plaintiffs are African-American. A Caucasian Waffle House waitress, Brittany Campbell, told the plaintiffs that they could not sit there because the booth was reserved.[2] When plaintiffs refused to move, Brittany

---

[2]<u>See</u> Oral/Videotaped Deposition of Cottrell McLaurin Volume 2 ("Cottrell McLaurin Deposition Vol. 2"), Exhibit F to Defendant Waffle House, Inc.'s Motion for Summary Judgment ("Defendant's MSJ"), Docket Entry No. 51-6, p. 37:15-18 ("Q. You didn't hear her say, 'You can't sit there because of your skin color'? A. She said we couldn't sit there because the booth was reserved. Somebody was already sitting there.").

Campbell asked an African-American co-worker to tell the plaintiffs they could not sit there, but the co-worker said, "I don't see why there's a problem with them sitting here."[3]  Thereafter, Brittany Campbell told the plaintiffs that she would not serve them.  The grill operator and employee in charge, a Caucasian named Jeffery ("J.D.") Authement ("Authement"), apologized to the plaintiffs for Brittany Campbell's conduct, tried to persuade another wait person to serve them, and when unable to do so, took the plaintiffs' order, cooked, and served the plaintiffs their meals.[4]

---

[3]Oral and Videotaped Deposition of Toni Lewis Kelly ("Kelly Deposition"), Exhibit C to Defendant's MSJ, Docket Entry No. 51-3, pp. 30:25-31:8 ("Q. Did -- once you wouldn't move what did she do? A. She -- she then . . . walked over to grab one of . . . her co-workers to come over and explain to us that we could not sit there. So she went over and grabbed a co-worker and walked him over to . . . our seat and told him 'Could you tell these people they can't sit here?'  And he looked at the table and he said, immediately after that, 'I don't see why there's a problem with them sitting here.'").

[4]Id. at 40:14-41:23 ("Q. All right.  And so after --- and then Brittany got the other guy and he came over and said 'I don't see why you can't sit there' and so y'all continued to sit there.  How long between that and when somebody actually took your order? A. . . . So that's when the manager walked over.  And the manager started to apologize for, you know -- the manager -- she's trying to explain to the manager, you know, that we couldn't sit there and, you know, that -- you know, she wasn't gonna serve us and so the manager started to apologize for her actions and told us that he would go ahead and try and get us served -- or try to get someone over there to try to get our -- our order but he was pretty busy.  He was, of course, on the grill at the time.  So at that particular point between then and the -- probably -- I would say it was probably maybe 15 minutes before we actually got our order taken.  Q. Okay.  But he is the one that took your order?  A. He is the one that took it because, of course, all the other wait staff was pretty busy with the other customers because it was pretty
(continued...)

A group of motorcyclists (James Campbell—Brittany Campbell's father, Robert and Mandi Haynes, Allan Ayers, and a Bandido) entered the restaurant and sat at a booth next to the plaintiffs.[5] Campbell served the motorcyclists who plaintiffs contend were all Caucasian.[6]   After refusing to serve the plaintiffs, Brittany Campbell harassed them by asking about their orders.   Plaintiffs allege that when plaintiffs left the restaurant, James Campbell and other members of his party followed them outside where James Campbell showed a knife to intimidate and threaten them, and Brittany Campbell insulted and embarrassed them.[7]

---

[4](...continued)
crowded.   Q. So he tried to get another waitress -- A. He tried to get someone else from the other side to come and wait on us.   They were like, we can't, at the time we're busy, you know, we're packed up.   And then he came over and he immediately told us that, you know, that he would go ahead and take care of us.   And again apologizing again for Brittany's actions."). _See also_ Oral and Videotaped Deposition of Cottrell McLaurin Volume 1 ("Cottrell McLaurin Deposition Vol. 1"), Exhibit B to Defendant's MSJ, Docket Entry No. 51-2, p. 47:23-25 ("Q. And I understand this fellow, J.D., was the guy that took your order and served you the food? A.   Yes.   He was."); Declaration of Jeffery "JD" Authement, Exhibit J to Defendant's MSJ, Docket Entry No. 51-10, ¶¶ 6-7 (stating that no manager was on duty, he was operating the grill, and he and salesperson, Lori Anders, were the employees in charge).

[5]<u>See</u> Oral and Videotaped Deposition of Robert Haynes ("Robert Haynes Deposition"), Exhibit D to Defendant's MSJ, Docket Entry No. 51-4, pp. 21:22-22:9; 25:12-15 (one member of their party was a Bandido, and James Campbell was Brittany Campbell's father).

[6]Plaintiffs' Supplemental Response in Opposition to Waffle House Inc.'s Motion for Summary Judgment ("Plaintiffs' Supplemental Response"), Docket Entry No. 58, p. 2.

[7]Plaintiffs' Third Amended Complaint, Docket Entry No. 16, pp. 2-3 ¶ 9.

## II.  Procedural History

On January 15, 2014, Sharon Smith McLaurin and Cottrell McLaurin filed suit against the Waffle House, Inc., in the 270th District Court of Harris County, Texas, Cause No. 2014-01839, asserting claims for race and color discrimination; respondeat superior and ratification; false imprisonment; intentional infliction of emotional distress; negligent hiring, supervision, training, and retention; and assault and battery.[8]  On January 22, 2015, plaintiffs filed an amended petition adding plaintiffs Toni Lewis Kelly and Donald Kelly.[9]  On March 21, 2014, defendant removed this action on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a), asserting that plaintiffs are all citizens of Texas, defendant is a citizen of Georgia, and the amount in controversy exceeds $1,000,000.00.[10]  The live pleading is Plaintiffs' Third Amended Complaint (Docket Entry No. 16).[11]

## III.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law

---

[8]Defendant Waffle House, Inc.'s Notice of Removal, Docket Entry No. 1, p. 1 and Plaintiffs' Original Petition, Exhibit C-1 thereto, Docket Entry No. 1-1.

[9]Id. & n.1.

[10]Id. at 3-5.

[11]See Order, Docket Entry No. 24, denying defendant's motion to strike Plaintiffs' Third Amended Complaint.

entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial.  Id.  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).  The nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. Id. at 1537.  Factual controversies are to be resolved in favor of

-6-

the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

## IV.   <u>Analysis</u>

Asserting that "rude or poor service is not actionable and an employer is not responsible for alleged intentional torts of its employees that fall outside their scope of employment,"[12] defendant argues that it is entitled to summary judgment because plaintiffs are unable to produce evidence capable of raising a genuine issue of material fact on any of their asserted claims, i.e., for discrimination in public accommodations in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, false imprisonment, intentional infliction of emotional distress, negligent hiring, supervision, training, and retention, assault and battery, and declaratory judgment.[13]

## A.   Discrimination in Public Accommodations

Plaintiffs allege that Waffle House discriminated against them on the basis of their race, African-American, in violation of Title II by "fail[ing] and refus[ing] to provide restaurant service

---

[12]Defendant Waffle House, Inc.'s Reply to Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 57, p. 1.

[13]<u>Id.</u>   <u>See also</u> Defendant Waffle House, Inc.'s Supplemental Reply to Plaintiffs' Supplemental Response in Opposition to Defendant's Motion for Summary Judgment ("Defendant's Supplemental Reply"), Docket Entry No. 60, p. 1.

to Plaintiffs that was equal to that provided by Defendant[] Waffle House to Caucasian persons (as exemplified by service [provided] to Defendant Bandidos Motorcylce Club)."[14]  Plaintiffs also allege that Waffle House has engaged in a pattern and practice of refusing to provide equal service to African Americans, and that unless permanently enjoined from the alleged conduct will continue to discriminate against plaintiffs and other members of their race.[15] Defendant argues that it is entitled to summary judgment on the Title II claims because plaintiffs are unable to produce evidence from which a reasonable fact-finder could conclude that the conduct of Brittany Campbell about which they complain was motivated by race discrimination, or that injunctive relief is warranted.[16]

### 1.   Applicable Law

Title II prohibits discrimination or segregation in places of public accommodation and in pertinent part provides:

---

[14]Plaintiffs' Third Amended Complaint, Docket Entry No. 16, p. 3 ¶ 10.  See also Plaintiffs' Response in Opposition to Waffle House Inc.'s Motion for Summary Judgment ("Plaintiffs' Response"), Docket Entry No. 54, p. 3 ("Waffle House by and through its employee Brittany Campbell discriminated against Plaintiffs by refusing to serve them based on their race."); Plaintiffs' Supplemental Response, Docket Entry No. 58, p. 2 ("Plaintiffs proffer evidence from the record that the table of Caucasian customers adjacent to Plaintiffs were treated differently by Brittany Campbell than Plaintiffs were treated.").

[15]Plaintiffs' Third Amended Complaint, Docket Entry No. 16, pp. 3-4 ¶¶ 11-12.

[16]Defendant's MSJ, Docket Entry No. 51, pp. 4-13.

(a)   Equal access

All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

(b)   . . .

Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce . . .

. . .

(2)  any restaurant . . . principally engaged in selling food for consumption on the premises . . .

42 U.S.C. § 2000a.  The gravamen of a Title II claim is the denial to plaintiff of full and equal enjoyment of the services offered by the establishment.  See United States v. DeRosier, 473 F.2d 749, 752 (5th Cir. 1973) ("[Title II] proscribes any and all efforts to deny one 'the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodation' of that place because of discrimination based on race, color, religion or national origin.").  The only relief available under Title II is injunctive relief.  See Newman v. Piggie Park Enterprises, Inc., 88 S. Ct. 964, 966 (1968) (per curiam) ("When a plaintiff brings an action under [Title II], he cannot recover damages.").  See also Fahim v. Marriott International, Inc., Civil Action No. H-06-4035, 2007 WL 3118186, *1 (S.D. Tex. October 22, 2007) ("[I]t has been

established for decades that actual damages are not available under Title II."), aff'd sub nom., Fahim v. Marriott Hotel Services, Inc., 551 F.3d 344 (5th Cir. 2008).

Discrimination claims brought pursuant to Title II can be proven by direct or circumstantial evidence.  See Fahim, 551 F.3d at 349.  Direct evidence of discrimination is evidence "that, if believed, proves the fact of discriminatory animus without inference or presumption."  Rachid v. Jack In The Box, 376 F.3d 305, 310 n.6 (5th Cir. 2004).  Plaintiffs have not cited direct evidence of race discrimination and do not argue that this is a direct evidence case.  Instead, plaintiffs have acknowledged that claims for discrimination in public accommodation asserted under Title II are commonly analyzed pursuant to the framework used for employment discrimination asserted under Title VII and 42 U.S.C. § 1981 articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973).[17]  See Fahim, 551 F.3d at 349-50 (recognizing that due to the scant amount of case law analyzing discrimination claims under Title II, courts often apply case law developed with respect to claims of employment discrimination brought under Title VII and 42 U.S.C. § 1981).  The McDonnell Douglas framework used to analyze circumstantial evidence of

---

[17]Plaintiffs' Supplemental Response, Docket Entry No. 58, p. 4 ("[T]o present proof by circumstantial evidence of intentional discrimination, plaintiffs must satisfy the heightened burden shifting analytical framework established in McDonnell Douglas Corp. v. Green.").

discrimination is a burden-shifting exercise pursuant to which plaintiffs carry the initial burden of demonstrating a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action at issue. If the defendant articulates such a reason, the burden shifts back to the plaintiffs to cite evidence capable of creating a genuine issue of material fact for trial that the defendant's stated reason is not true but, instead, is a pretext for discrimination. McDonnell Douglas, 93 S. Ct. 1824-27; Fahim, 551 F.3d at 349-50. See also Reeves, 120 S. Ct. at 2106.

    2.   <u>Application of the Law to the Undisputed Facts</u>

        (a)  Plaintiffs Have Failed to Cite Evidence Capable of Establishing Discrimination in Public Accommodation

           **(1)  Plaintiffs Have Established a Prima Facie Case**

Citing Fahim, 551 F.3d at 350, Waffle House argues that plaintiffs are unable to establish a prima facie case of discrimination because they are unable to produce evidence showing either that they were denied service, or that the service they received was not the same service that Caucasian customers received.[18]   In Fahim, 551 F.3d at 350, the Fifth Circuit acknowledged with approval that the district court had extrapolated from employment law cases the following elements of a prima facie case of discrimination in public accommodation:

_____

    [18]Defendant's MSJ, Docket Entry No. 51, pp. 6-10.

> [Plaintiff] could establish a prima facie case of discrimination in public accommodation if she showed that (1) she is a member of a protected class; (2) she attempted to contract for the services of a public accommodation; (3) she was denied those services; and (4) the services were made available to similarly situated persons outside her protected class.

The Fifth Circuit noted that

> some courts have applied a test in which the fourth element is modified.  The fourth element in that modified test asks whether (a) the services were made available to similarly situated persons outside the plaintiff's protected class *or* (b) the plaintiff "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory."

Id. at n.2 (citing Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 872 (6th Cir. 2001) (citing Callwood v. Dave & Buster's, Inc., 98 F. Supp. 2d 694 (D. Md. 2000)).  Some courts apply the modified test to cases arising in restaurant settings because plaintiffs in such cases are often unable to point to similarly situated persons outside of their protected class who were treated differently.  See Christian, 252 F.3d at 870-71; Callwood, 98 F. Supp. 2d at 706.

> Factors relevant to the determination of whether conduct is "markedly hostile" are whether the conduct of a merchant or her agents is (1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination.

Callwood, 98 F. Supp. 2d at 708.  Because the plaintiff in Fahim was able to point to similarly situated persons who were treated differently and neither party argued that the Callwood test applied in that case, the Fifth Circuit did not have to decide if the

-12-

Callwood test may appropriately be applied in Title II cases. Fahim, 551 F.3d at 350 & n.2.

Acknowledging that "they were not denied service *per se*,"[19] plaintiffs argue that they have nonetheless cited evidence establishing a prima facie case of public accommodation discrimination under the Fahim test because "[d]efendant has conceded to elements (1) they are members of a protected class and (2) they attempted to contract for services of a public accommodation,"[20] and that their own deposition testimony shows that

> (3) they were denied those services (See Plaintiffs' Exhibit C: lines 6-16, page 29; lines 21-25, page 31; lines 1-9, page 32; lines 23-25, page 40; lines 1-8 and 21-23, page 41; Defendant's Exhibit A: lines 10-19, page 55; lines 18-24, page 56; lines 1, 2, page 57; line 3, page 59; lines 1-18, page 61; lines 21, 22, page 66; lines 5-17, page 73; Defendant's Exhibit B: lines 4-6, 12, 13, page 44; lines 1-11, page 45, lines 11, 12, 17-23, page 51; lines 23-25, page 55; and Defendant's Exhibit E: lines 8, 9, page 94) and (4) the services were made available to similarly situated persons outside the protected class (See Plaintiffs' Exhibit D: lines 10, 11, page 12; lines 16, 17, page 33; lines 15-17, page 36; and Exhibit E: lines 18-20, page 13; lines 11-14, page 30; and lines 10, 11, page 31).[21]

Defendant argues that plaintiffs have failed to establish a prima facie case because the evidence only shows that Brittany Campbell did not serve the plaintiffs, not that the plaintiffs were denied services.[22]

---

[19]Id. at 5.

[20]Id. at 6.

[21]Id.

[22]Defendant's Reply, Docket Entry No. 57, pp. 3-5; Defendant's Supplemental Reply, Docket Entry No. 60, pp. 3-5.

The evidence regarding the service that plaintiffs received at the Waffle House is not in dispute; in dispute is whether that evidence establishes the third and fourth elements of a prima facie case of discrimination in public accommodation in violation of Title II, i.e., whether the plaintiffs were denied services, and whether the services that the plaintiffs were denied were made available to similarly situated persons outside their protected class.   Defendant's argument that plaintiffs were not denied services made available to similarly situated persons outside their protected class is unavailing because plaintiffs did not receive services from Brittany Campbell, the wait person assigned to serve their table but, instead, from Authement, the employee in charge who was operating the grill and unable to find another wait person willing to serve the plaintiffs.   Moreover, even after Brittany Campbell, the wait person assigned to serve the plaintiffs' table, refused to serve them, Brittany Campbell harassed the plaintiffs by asking them questions about their food that made them feel uncomfortable.   While none of the plaintiffs complained about their food, and two of the plaintiffs ate their food, Brittany Campbell's actions made Cottrell McLaurin so uncomfortable that he did not eat his food.   See § I, above.   Although it is a close question, the court concludes that plaintiffs have established a prima facie case of discrimination in public accommodation because undisputed evidence shows that while plaintiffs received services at the Waffle House from the grill operator/employee in charge, the

-14-

services they received differed from the services that the group of motorcyclists sitting at the next table who were not African-American received from the waitress who refused to serve them.

### (2)   Defendant Has Articulated a Non-Discriminatory Reason for the Alleged Discrimination

Defendant argues that Brittany Campbell had a legitimate, non-discriminatory reason for telling plaintiffs not to sit at their chosen table and then refusing to serve them; *i.e.*, that the table was taken by another customer, or reserved for another party.[23] Defendant argues that

> [e]ven though Plaintiffs may not have believed Brittany Campbell when she explained her reasoning, Plaintiffs have not put forth evidence sufficient to create a genuine issue of material fact that this reason was pretext or that Plaintiffs' race was a motivating factor in Brittany Campbell's alleged refusal to serve them.[24]

Defendant's contention that the plaintiffs' table was already taken by another customer or reserved for another party is a legitimate, non-discriminatory reason for Brittany Campbell's actions.

### (3)   Plaintiffs Have Not Produced Evidence of Pretext Capable of Raising a Fact Issue

Once a defendant offers a legitimate, non-discriminatory reason for its allegedly discriminatory action, the <u>McDonnell Douglas</u> burden shifting analysis requires plaintiffs to cite

---

[23]Defendant's MSJ, Docket Entry No. 51, p. 10 (citing Declaration of Lori Anders, Exhibit I thereto, Docket Entry No. 51-9, and Declaration of Jeffrey "J.D." Authement, Exhibit J thereto, Docket Entry No. 51-10).

[24]<u>Id.</u> at 11.

evidence sufficient to create a genuine issue of material fact that the defendant's reason is a pretext for discrimination. <u>Fahim</u>, 551 F.3d at 350-51.   To raise an issue of pretext plaintiffs must present evidence showing that defendant's proffered reason for Brittany Campbell's failure to serve them is false or unworthy of credence, and more likely than not motivated by discriminatory animus for plaintiffs' race, i.e., African-American.   <u>Id.</u> at 351 (citing <u>Rachid</u>, 376 F.3d at 312).

Plaintiffs argue that the defendant's legitimate, non-discriminatory reason for Brittany Campbell's actions was not true because Waffle House has an open seating policy.  As evidence that the defendant's stated reason for the disparate treatment they received was a pretext for race discrimination,

> Plaintiffs have offered these facts:   specifically Brittany Campbell's repeated reference to Plaintiffs as "you people" (See Exhibit C 30:6, 10, 11; 32:1; 46:25; 53:24; 59:13-15); that Brittany Campbell refused to serve them (See Exhibits C 31:25; 32:1, 4, 12, 13; 41:1; and D 33:23-24; 34:24-25); that Brittany Campbell told them that they needed to move and that they could not sit at a booth on that side of the restaurant (See Exhibits C 32:3-4); that there were no other African American patrons or available tables on that side of the restaurant (See Exhibit C 32:4-6); that Brittany Campbell taunted and harassed them the entire time Plaintiffs were in the restaurant (See Exhibit C 42:6-7); and that Brittany Campbell refused them service not because of her pretext that the table belonged to another patron, but because she was holding the table for a group of motorcycle riders among whom all were member(s) of "non-inclusive" clubs (See Exhibit D 58:2-8) and/or the "1%" "outlaw" (See Exhibits D 17:23-25; 18:1-6; 59:7-13; and E 17:8-13) motorcycle club "The Bandidos."[25]

---

[25]Plaintiffs' Response, Docket Entry No. 54, pp. 3-4.

Defendant does not dispute that the waitress assigned to serve the plaintiffs' table, Brittany Campbell, told the plaintiffs that they could not sit at their chosen table because it was occupied or reserved for another party, refused to serve the plaintiffs when they refused to move, or referred to the plaintiffs as "you people." Instead, defendant argues that "[a]t most, [Brittany Campbell's statements and actions] would be conduct in violation of Waffle House's seating policy — not an actionable federal civil rights violation."[26] Defendant disputes, however, that plaintiffs have presented evidence from which a reasonable fact-finder could conclude that Brittany Campbell's actions were motivated by discrimination based on the plaintiffs' race.[27] Instead, citing plaintiffs' response in opposition to the motion for summary judgment, defendant argues that "by [p]laintiffs' very own admission, Brittany Campbell did not refuse to serve [p]laintiffs because of their race, but rather because she was saving the table for another party."[28]

In response to defendant's argument that Brittany Campbell had a legitimate, non-discriminatory reason for telling them not to sit at their chosen table and then refusing to serve them, plaintiffs assert that

---

[26]Defendant's Supplemental Reply, Docket Entry No. 60, p. 4.

[27]Id. at 4-5 (quoting Plaintiffs' Response, Docket Entry No. 54, p. 4).

[28]Id. at 1.

-17-

> Brittany Campbell refused them service not because of her pretext that the table belonged to another patron, but because she was holding the table for a group of motorcycle riders among whom were member(s) of "non-inclusive" clubs (See Exhibit D 58:2-8) and/or the "1%" "outlaw" (See Exhibits D 17:23-25; 18:1-6; 59:7-13; and E 17:8-13) motorcycle club "The Bandidos."[29]

Exhibits D and E cited above are the depositions of Robert and Mandi Haynes, two members of the group of motorcyclists who sat at the table next to the plaintiffs. Robert Haynes testified that he belongs to a motorcycle club for fire fighters called Fire and Iron, and that the club did not have any African-American members.[30] Mandi Haynes testified that the Fire and Iron club is not a "1%" club, meaning that it is not an outlaw club.[31]

Despite the fact that Waffle House has an open seating policy, the evidence shows — and plaintiffs themselves argue — that Brittany Campbell's actions were motivated by her desire to hold the table at which the plaintiffs chose to sit for another party, i.e., the party of motorcyclists that included her father. Any inference that Brittany Campbell's actions were motivated by racial animus because the Fire and Iron club to which Robert Haynes

---

[29]Plaintiffs' Response, Docket Entry No. 54, p. 4.

[30]Robert Haynes Deposition, Exhibit D to Defendant's MSJ, Docket Entry No. 51-4, pp. 17:23-18:6; 59:7-13.

[31]Oral and Videotaped Deposition of Mandi Haynes ("Mandi Haynes Deposition"), Exhibit 4 to Plaintiffs' Response, Docket Entry No. 55-4, p. 17:8-13. See also Robert Haynes Deposition, Exhibit D to Defendant's MSJ, Docket Entry No. 51-4, pp. 17:7-18:17 (testifying that the "1%" clubs are clubs with territories such as the Hells Angels in California and the Bandidos in Texas, but that his club has no territory and is not a 1% club).

belongs had no African-American members is insufficient to raise a fact issue for trial because there is no evidence that Brittany Campbell knew or had reason to know that the Fire and Iron club had no African-American members, the group of motorcyclists at the Waffle House did not all belong to that same club, and there is no evidence that the Bandidos motorcycle club to which at least one of the group belonged had no African-American members.[32]

Plaintiffs' reliance on Brittany Campbell's use of the phrase "you people" is also insufficient to raise an inference that Brittany Campbell's actions were motivated by race discrimination because that phrase is neither overtly racial nor discriminatory. See Anderson v. Wachovia Mortgage Corp., 621 F.3d 261, 269-70 (3d Cir. 2010) (collecting cases rejecting reliance on the phrase "you people" used in isolation as "too vague" to constitute either direct or circumstantial evidence of race discrimination). See also Whitley v. Peer Review System, Inc., 221 F.3d 1053, 1056 (8th Cir. 2000) (describing use of the phrase "you people" as evidence in a McDonnell Douglas analysis "innocuous"). Moreover, although all three of the plaintiffs testified about what Brittany Campbell said to them, only one of them, Toni Lewis Kelly, testified that Brittany Campbell used the term "you people." Toni Lewis Kelly testified that:

---

[32]See Robert Haynes Deposition, Exhibit D to Defendant's MSJ, Docket Entry No. 51-4, pp. 21:22-22:9 (stating one member of their party was a Bandido).

Q.   And what did she say after Sharon asked her why?

A.   She told us -- she told her that because she said
     that we couldn't sit there and, quote-unquote, she
     said, because you people can't sit here.

Q.   When she said that, did she make any comments about
     your race?

A.   No.

Q.   She just said "you people can't sit here."

A.   Correct.

Q.   But she never explained why you couldn't sit there?

A.   Well, she just said that because someone was
     sitting there.  Well, of course, when we walked in
     the table was empty, there was no one there.[33]

Q.   And did Brittany ever say anything to anybody at
     your table about your race or anything?

A.   Other than calling us "you people."

Q.   And when she called -- called you "you people," do
     you think she meant -- meant that as a racial,
     derogatory term?

     Ms. Session: Objection; form.

A.   I definitely think that.[34]

Toni Lewis Kelly also testified that Brittany Campbell repeated the
phrase "you people" to the plaintiffs after they had exited the
restaurant and were outside in the parking lot.[35]  A plaintiff's
subjective belief that she was being targeted for discriminatory

---

[33]Kelly Deposition, Exhibit C to Defendant's MSJ, Docket Entry
No. 51-3, p. 30:2-16.

[34]Id. at 43:17-24.

[35]Id. at 46:25; 53:24; 59:13-15.

conduct is not enough to withstand summary judgment.  See Douglass
v. United Services Automobile Association, 79 F.3d 1415, 1430 (5th
Cir. 1996) (plaintiff's subjective belief that she was being
targeted is not enough to withstand summary judgment).  See
Anderson, 621 F.3d at 279 (rejecting use of the phrase "you people"
as sufficient to show "that discrimination was more likely than not
a . . . determinative cause of [the defendant's actions]").

When asked to describe their encounter with Brittany Campbell,
neither Sharon Smith McLaurin nor Cottrell McLaurin said that
Brittany Campbell used the phrase "you people."  Instead, in
excerpts from Sharon Smith McLaurin's deposition cited in the
plaintiffs' responses to the Defendant's MSJ, Sharon Smith McLaurin
testified:

    Q.  And did somebody come over to wait on you?

    A.  Brittany.

    Q.  And did she come over and take your order?

    A.  No, sir.  She just told us we needed to move.  That
        we could not sit there.

    Q.  So precisely she said you needed to move, you could
        not sit there?

    A.  Yes, sir.

    Q.  Did she give you any explanation at that time?

    A.  She just said we could not sit there.[36]

------------------------------------------------

[36]Plaintiffs' Supplemental Response, Docket Entry No. 58, p. 5
(citing Oral and Videotaped Deposition of Sharon Smith McLaurin
Volume 1 ("Sharon Smith McLaurin Deposition Vol. 1"), Exhibit A to
Defendant's MSJ, Docket Entry No. 51-1, p. 55:10-19).  See also id.
at 56:24 ("She just said you just can't sit there.").

Plaintiffs also cite Sharon Smith McLaurin as testifying:

> Q.   And on your call you mentioned that Brittany said you couldn't -- she wouldn't serve you because of where you sat?
>
> A.   Yes, ma'am.
>
> Q.   Did she at that point say anything, "I'm not serving you because you're black and you're sitting there"?
>
> A.   No.  She said that she wasn't serving us because we were sitting out of place.[37]

Plaintiffs also cite excerpts from the deposition of Cottrell McLaurin where he testified:

> Q.   . . . And then so what happened next?  You sit down --
>
> A.   We sat down.  The young lady came over and told us we couldn't sit there.  And stated if we continued to sit there, she wasn't going to serve us.
>
> Q.   Did she -- did you respond to her?
>
> A.   I did.  My wife did.  And I told her, I said we're not moving.
>
> . . .
>
> Q.   Did you ask her why you couldn't sit there?
>
> A.   She stated that the booth was reserved for somebody else.  Somebody else had already been sitting there.  And my response to her, the waitress, was if somebody else was sitting there, there should have been at least tableware or some kind of glass on the table, if somebody was sitting there. Wasn't anything on the table.  It was clear.
>
> So we were under the assumption you're free to sit anywhere you want to.  It's open seated.  There's no waitresses to come seat you at a restaurant.

---

[37]Plaintiffs' Supplemental Response, Docket Entry No. 58, p. 5 (citing Sharon Smith McLaurin Deposition, Volume 2 ("Sharon Smith McLaurin Deposition Vol. 2"), Exhibit E to Defendant's MSJ, Docket Entry No. 51-5, p. 34:1-22).

And so that went on for maybe ten or fifteen minutes.  I'm not going to serve you and I'm not going to do this and that.

Q.   And what else was said during that ten to fifteen minutes?

A.   She just kept -- the waitress just kept stating she was not going to serve us.[38]

Plaintiffs also cite Cottrell McLaurin as testifying:

Q.   . . . What was Brittany saying?

A.   Brittany was refusing to serve us because -- her words exactly were the booth was reserved.  It was saved for somebody else.  You can't -- I mean the Waffle House is an open seated restaurant.  There's no reserved seating for anybody.  First come, first serve, that's how it is.

So we sat down.  And she just kept stating I'm not serving y'all.  I'm not going to serve y'all.  And my remark was well, somebody is going to serve us. I said that.

Q.   And what did she say?

A.   Her words were always I'm not going to serve y'all.[39]

The court concludes that while plaintiffs have presented evidence from which a reasonable fact-finder could conclude that Waffle House's proffered reason for Brittany Campbell's failure to serve them may have constituted a violation of Waffle House's open seating policy, evidence that Brittany Campbell told them they could not sit at their chosen table because it was saved or

---

[38]Id. (citing Cottrell McLaurin Deposition Vol. 1, Exhibit B to Defendant's MSJ, Docket Entry No. 51-2, pp. 44:2-45:11).

[39]Id. (citing Cottrell McLaurin Deposition Vol. 1, Exhibit B to Defendant's MSJ, Docket Entry No. 51-2, p. 51:10-23).

reserved for someone else, Brittany Campbell's refusal to serve the plaintiffs in response to their refusal to move, and Brittany Campbell's alleged reference to the plaintiffs as "you people,"[40] does not constitute evidence from which a reasonable fact-finder could conclude either that Brittany Campbell's stated reason for her conduct was not true or that Brittany Campbell's actions were more likely than not motivated by discriminatory animus for the plaintiffs' race.  "Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race.  This is not sufficient." Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001) (citing Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998) (anti-discrimination law "does not make [defendants] liable for doing stupid or even wicked things; it makes them liable for discriminating")).  See also Feacher v. Intercontinental Hotels Group, 563 F. Supp. 2d 389, 404 (N.D.N.Y. 2008) (quoting Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999) ("Plaintiffs' 'feelings and perceptions of being discriminated against are not evidence of discrimination.'")).  Accordingly, the court concludes that the plaintiffs have failed to present evidence capable of raising a

---

[40]Although plaintiffs alleged and contended in their briefing that Brittany Campbell told them they could only sit on one side of the restaurant, none of the deposition excerpts cited in support of this allegation and contention attributed to Brittany Campbell contain any statements about where in the restaurant she wanted the plaintiffs to sit.

genuine issue of material fact for trial on their Title II claim of discrimination in public accommodation.

> (b)   Plaintiffs Have Failed to Cite Evidence Capable of Establishing That Injunctive Relief Is Warranted

Plaintiffs allege based on information and belief that Waffle House has engaged in a pattern and practice of refusing to provide equal service to African Americans with the purpose of discouraging African Americans from patronizing the restaurant, and that unless permanently enjoined from the alleged conduct Waffle House will continue to discriminate against plaintiffs and other members of plaintiff's race.[41]

Asserting that Plaintiffs have advanced their claims of race discrimination exclusively under Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a), and that the plaintiffs' only possible remedy for their Title II claims is an injunction plus attorneys' fees, Waffle House argues that it is entitled to summary judgment on these claims because plaintiffs have failed to cite any evidence capable of establishing that an injunction is warranted.[42]  Citing City of Los Angeles v. Lyons, 103 S. Ct. 1660 (1983), defendant argues that "[i]n order to claim injunctive relief, a plaintiff must show a real or immediate threat that the plaintiff will be wronged again — a likelihood of substantial and immediate

---

[41]Plaintiffs' Third Amended Complaint, Docket Entry No. 16, pp. 3-4 ¶¶ 11-12.

[42]Defendant's MSJ, Docket Entry No. 51, pp. 12-13.

-25-

irreparable injury.   Plaintiffs have not shown any real or immediate threat that they will be harmed again."[43]

In <u>Lyons</u> the Supreme Court stated that the plaintiff's "standing to seek the injunction requested depended on whether he was likely to suffer future injury [from the challenged action]". <u>Id.</u> at 1667.   <u>See also</u> <u>Arguello v. Conoco, Inc.</u>, 330 F.3d 355, 361 (5th Cir.), <u>cert. denied</u>, 124 S. Ct. 567 (2003) ("a litigant seeking injunctive relief must demonstrate 'that [he is] likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury'") (citations omitted).

> Plaintiffs respond that
>
> Waffle House asserts that there is no evidence that the requested declaratory relief is necessary as Plaintiffs have not shown that they may be subject to the same treatment.   However, the same persons who accosted Plaintiffs still frequent that specific Waffle House restaurant (See Exhibit D 81:9-10) and there is nothing in place to prevent the same treatment again, especially since Waffle House has determined that there was nothing wrong or improper with the actions of Brittany Campbell and blamed the incident on the Plaintiffs.[44]

Plaintiffs' Exhibit D is the deposition of Robert Haynes who testified at the cited location:

Q.   Okay. But you said that you had been back.

A.   Yes.[45]

---

[43]<u>Id.</u> at 12.

[44]Plaintiffs' Response, Docket Entry No. 54, p. 4.

[45]Robert Haynes Deposition, Exhibit D to Defendant's MSJ, Docket Entry No. 51-4, p. 81:9-10.

-26-

Plaintiffs' reliance on testimony from Robert Haynes that he has been back to the Waffle House since the events at issue transpired does not constitute evidence from which a reasonable fact-finder could conclude that an injunction is warranted because Robert Haynes was merely a patron at the restaurant, not a defendant in this action or a defendant's employee who's conduct could be enjoined.  Because plaintiffs have neither argued nor presented any evidence capable of showing either that they are likely to suffer future injury by the defendant, or that the sought-after relief will prevent that future injury, defendant is entitled to summary judgment on its Title II claims.  Accordingly, even if the court has incorrectly concluded that plaintiffs have failed to raise a genuine issue of material fact for trial as to whether Brittany Campbell's actions were motivated by discriminatory animus for plaintiffs' race, the court concludes that Waffle House is entitled to judgment as a matter of law on plaintiffs' Title II claims because plaintiffs have failed to present evidence capable of supporting issuance of an injunction, the only relief available for Title II claims.

## B.    False Imprisonment

Plaintiffs' claims for false imprisonment are based on allegations that they "were cornered by Brittany Campbell accompanied by Defendant Bandidos Motorcycle Club in the Defendant

Waffle House, Inc. parking lot.  Plaintiffs suffered damages for
which Plaintiffs herein sue."[46]

Waffle House argues that it is entitled to summary judgment on
plaintiffs' claims for false imprisonment because no Waffle House
employee willfully detained the plaintiffs, and because any such
detention conducted by a Waffle House employee would have been
outside the scope of their employment.[47]  Citing the deposition
testimony of plaintiffs Sharon Smith McLaurin and Toni Lewis Kelly,
defendant also argues that it is entitled to summary judgment on
the false imprisonment claims because both of these plaintiffs
testified that they were free to step away from the conversation in
the parking lot, and that no Waffle House employee detained them.[48]

### 1.   Applicable Law

"False imprisonment in Texas is the direct restraint by one
person of the physical liberty of another, without adequate legal
justification."  Reicheneder v. Skaggs Drug Center, 421 F.2d 307,
310 (5th Cir. 1970).  "The essential elements of false imprisonment
[under Texas law] are:  (1) willful detention; (2) without consent;
and (3) without authority of law."  Randall's Food Markets, Inc. v.

---

[46]Plaintiffs' Third Amended Complaint, Docket Entry No. 16,
p. 5 ¶ 16.

[47]Defendant's MSJ, Docket Entry No. 51, pp. 15-16.

[48]Id. at 13-14 (citing Sharon Smith McLaurin Deposition Vol. 1,
Exhibit A to Defendant's MSJ, Docket Entry No. 51-1, p. 89:9-16,
and Kelly Deposition, Exhibit C to Defendant's MSJ, Docket Entry
No. 51-3, pp. 60:25-61:1).

Johnson, 891 S.W.2d 640, 644 (Tex. 1995) (quoting Sears, Roebuck &
Co. v. Castillo, 693 S.W.2d 374, 375 (Tex. 1985)). "A detention
may be accomplished by violence, by threats, or by any other means
that restrains a person from moving from one place to another."
Id. at 645. "Where it is alleged that a detention is effected by
a threat, the plaintiff must demonstrate that the threat was such
as would inspire in the threatened person a just fear of injury to
her person, reputation, or property." Id. "In Texas . . .
liability for false imprisonment extends beyond those who willfully
participate in detaining the complaining party to those who request
or direct the detention." Wal-Mart Stores, Inc. v. Rodriguez, 92
S.W.3d 502, 507 (Tex. 2002) (citing Joske v. Irvine, 44 S.W. 1059,
1063 (Tex. 1898)). To allege and prove instigation, "a plaintiff
must show that the defendant clearly directed or requested the
[detention]." Id.

2. Application of the Law to the Undisputed Facts

In response to Waffle House's motion for summary judgment,
plaintiffs argue that

> Waffle House by and through its employee Brittany
> Campbell and in collusion with the motorcycle club
> members followed Plaintiffs out of the restaurant (See
> Exhibits D 69:14-20; E 52:21-24), surrounded and detained
> Plaintiffs in a hostile manner all wearing motorcycle
> vests (See Exhibits D 26:2-4; E 24:7-14) — some of which
> were Bandidos' vests (See Exhibit D 52:11-14; E 54:7-8),
> spoke and yelled in a threatening manner (See Exhibit D
> 39:8-12), and exposed their weapons, namely knives (See
> Exhibit C 47:13-15), in a manner which inspired in
> Plaintiffs a just fear of injury. Considering that the

-29-

male motorcycle members exposed knives and all of the circumstances which had previously occurred inside the restaurant and the reputation for the propensity of violence of motorcycle clubs, Plaintiffs were justifiably in fear of injury to their persons.[49]

In the deposition excerpts cited in plaintiffs' initial response to Defendant's MSJ, Robert and Mandi Haynes testified that they were both wearing vests with the Fire and Iron motorcycle club insignia, the Bandido with them was wearing a vest with the Bandido insignia, when they saw James Campbell follow the plaintiffs out of the restaurant, they and other members of their party got up and went outside, too, and once outside they heard one of the female plaintiffs screaming and yelling at James Campbell.[50]   Plaintiffs also cite testimony of Toni Lewis Kelly that one of the motorcyclists pulled his vest jacket back to show the plaintiffs that he was "packing" a knife.[51]

In a supplemental response to Defendant's MSJ, plaintiffs

further argue that they were falsely imprisoned. (See Defendant's Exhibit A: lines 1-5, 17, page 78; lines 6-10, page 84; and lines 22-25, page 88; Defendant's Exhibit B: lines 20-22, page 50; lines 16-19, page 66; lines 21-24, page 67; lines 15-17, 24, 25 page 72; lines 1-6, 13-18, page 73; lines 13-15, page 74; and

_____

[49]Plaintiffs' Response, Docket Entry No. 54, pp. 4-5.

[50]See Robert Haynes Deposition, Exhibit D to Defendant's MSJ, Docket Entry No. 51-4, pp. 26:2-21, 39:8-12, 52:11-14, 54:7-8, 69:14-20; Mandi Haynes Deposition, Exhibit 4 to Plaintiffs' Response, Docket Entry No. 55-4, pp. 24:7-14, 52:21-24, 54:7-8.

[51]See Kelly Deposition, Exhibit C to Defendant's MSJ, Docket Entry No. 51-3, p. 47:13-15.

lines 14, 15, page 77; and Plaintiff's Exhibit C:
lines 1-5, page 82).[52]

In the deposition excerpts cited in Plaintiffs' Supplemental
Response to Defendant's MSJ, Sharon Smith McLaurin testifies that
one member of the motorcycle group followed them out of the
restaurant, and then other members of the motorcycle group came
outside.[53]   Cottrell McLaurin also testified that members of the
motorcycle group followed the plaintiffs out of the restaurant and
"almost circled us so we couldn't get to the car,"[54] the motorcycle
group stopped to talk to the plaintiffs and the plaintiffs stopped
to talk to them,[55] and the plaintiffs were not arguing with the
motorcycle group, but that one of the motorcycle group members kept
telling them that they should not have been disrespecting the
waitress.[56]

   Missing from plaintiffs' presentation is any evidence from
which a reasonable fact-finder could conclude that anyone

---

[52]Plaintiffs' Supplemental Response, Docket Entry No. 58,
pp. 10-11.

[53]Sharon Smith McLaurin Deposition Vol. 1, Exhibit A to
Defendant's MSJ, Docket Entry No. 51-1, pp. 78:1-5, 84:6-10, 88:22-
25.

[54]Cottrell McLaurin Deposition Vol. 1, Exhibit B to Defendant's
MSJ, Docket Entry No. 51-2, p. 50:22.  See also id. at 66:16-19;
73:15 ("There was a half circle.").

[55]Id. at 72:18-20 ("Q. Well, they stopped to talk to you and
you stopped to respond?  A. Yes.  We did.").

[56]Id. at 74:1.

restrained the physical liberty of any of the plaintiffs by threat
or otherwise, or that any Waffle House employee directed or
requested anyone to restrain plaintiff's physical liberty by threat
or otherwise.   Indeed, as defendant contends and plaintiffs admit,
the plaintiffs were not detained by anyone but, instead, were at
all times free to get in their car and leave.   Plaintiff Sharon
Smith McLaurin testified in her deposition:

> Q.   . . . So nothing [was] keeping you from getting in
> the car?
>
> A.   Other than stepping away from the conversation.
>
> Q.   So you could step — and you eventually did step
> away from the conversation after the conversation
> had run its course?
>
> A.   Yes, sir.
>
> Q.   And you left, correct?
>
> A.   Yes, sir.[57]

Plaintiff Toni Lewis Kelly testified in her deposition:

> Q.   . . . [D]id anybody from Waffle House prevent you
> from leaving?
>
> A.   No.[58]

The summary judgment evidence establishes that once outside in
the restaurant's parking lot, the plaintiffs voluntarily engaged in
conversation with members of the motorcycle group until the

---

[57]Defendant's MSJ, Docket Entry No. 51, pp. 13-14 (quoting
Sharon Smith McLaurin Deposition Vol. 1, Exhibit A to Defendant's
MSJ, Docket Entry No. 51-1: 89:9-16).

[58]Id. at 14 (quoting Kelly Deposition, Exhibit C to Defendant's
MSJ, Docket Entry No. 51-3, p. 60:25-61:2).

conversation ran its course, and the plaintiffs then got in their car and left.  When a person voluntarily complies with a request to remain on the premises, and despite that request is able to exercise their will to go whenever they please, that person is neither physically restrained nor falsely imprisoned.  See Johnson, 891 S.W.2d at 644-45.  See also Martinez v. Goodyear Tire & Rubber Co., 651 S.W.2d 18 (Tex. App. — San Antonio 1983, no writ) (finding no false imprisonment where plaintiff voluntarily complied with a request to remain on premises).  Because plaintiffs have failed to cite any evidence capable of establishing that anyone restrained them from leaving the restaurant's parking lot by threat or otherwise, the court concludes that defendant is entitled to summary judgment on their false imprisonment claims.

C.   **Assault and Battery**

Plaintiffs allege that

> Waffle House, Inc., by and through its employee Brittany Campbell in collusion with Defendant Bandidos Motorcycle Club intentionally, knowingly, or recklessly made contact with Plaintiffs' persons or threatened Plaintiffs with imminent bodily injury which caused injury to Plaintiffs. Brittany Campbell along with several members of the Defendant Bandidos Motorcycle Club approached, cornered, and threatened Plaintiffs with a knife on the Defendant Waffle House Inc.'s property, to wit, the parking lot, after Plaintiffs exited the Defendant Waffle House, Inc.'s restaurant. Plaintiffs suffered damages for which Plaintiffs herein sue.[59]

_____

[59]Plaintiffs' Third Amended Complaint, Docket Entry No. 16, p. 6 ¶ 22.

-33-

Waffle House argues that it is entitled to summary judgment on plaintiffs' claims for assault and battery because plaintiffs have conceded that no Waffle House employee, representative, or customer touched them, and because plaintiffs have failed to cite any evidence from which a reasonable fact-finder could conclude that any Waffle house employee, representative, or customer threatened them with imminent bodily harm, or instigated such a threat.[60]

1.   Applicable Law

The Texas Supreme Court has stated that

> [t]he tort of battery is when a person "(a) . . . acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."

Texas Department of Public Safety v. Cox Texas Newspapers, L.P., 343 S.W.3d 112, 126-27 (Tex. 2011) (quoting Restatement (Second) of Torts § 13 (1965); and Baily v. C.S., 12 S.W.3d 159, 162 (Tex. App. — Dallas 2000, no pet.) ("A person commits a battery if he intentionally or knowingly causes physical contact with another when he knows or should reasonably believe the other person will regard the contact as offensive or provocative.")).

In Texas the intentional tort of assault is identical to criminal assault.  See Villafranca v. United States, 587 F.3d 257, 260-61 (5th Cir. 2009) (citing Hall v. Sonic Drive-In of Angleton,

_____

[60]Defendant's MSJ, Docket Entry No. 51, pp. 20-24.

<u>Inc.</u>, 177 S.W.3d 636, 649 (Tex. App. — Houston [1st Dist.] 2005, pet denied) ("The elements of assault are the same in both the criminal and the civil context[s].")).  Texas Penal Code § 2201(a) provides, in pertinent part, that a person commits criminal assault if he:

> (1)  intentionally, knowingly, or recklessly causes bodily injury to another . . .
>
> (2)  intentionally or knowingly threatens another with imminent bodily injury . . .; or
>
> (3)  intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

To raise a fact issue for trial on their assault and battery claims plaintiffs must therefore present evidence capable of establishing either (1) that defendant intentionally, knowingly, or recklessly caused plaintiffs bodily injury; (2) intentionally, knowingly, or recklessly threatened plaintiffs with imminent bodily injury; or (3) intentionally, knowingly, or recklessly caused physical contact with plaintiffs that defendant knew or should reasonably have believed that plaintiffs would regard as offensive or provocative.  <u>Hall</u>, 177 S.W.3d at 649-50.  Where "one person assists another in making an assault, both are principals and liable in damages for any injury inflicted."  <u>Milliken v. Skepnek</u>, No. 14-96-01522-CV, 1999 WL 496505, at *6 (Tex. App. — Houston [14th Dist.] July 15, 1999, no pet.) ("Anyone who commands, directs, advises, encourages, procures, controls, aids, or abets a

wrongful act by another, is just as responsible for the wrongful act as the one who actually committed it.").

### 2.  Application of the Law to the Undisputed Facts

Plaintiffs respond to Defendant's MSJ on their claims for assault and battery by arguing that

> [t]he claim of assault by threat of imminent bodily injury arises from the negative exchange with Waffle House employee Brittany Campbell and the motorcycle club members outside of the restaurant (See Exhibit C 46:6-13) and the fact that the men while confronting [p]laintiffs showed [p]laintiffs that they were carrying knives (See Exhibit E 53:15-22, 25; 54:1-6) by moving their vests to reveal the weapons.  Plaintiffs feared that injury was imminent (See Exhibit C 57:3-4).[61]

Citing excerpts from their own depositions, plaintiffs argue that

> an assault occurred based on the evidence in the record. (See Defendant's Exhibit A: lines 4, 5, 12-15, page 80; lines 11-14, page 91; lines 17, 18, page 99; and lines 4-8, page 101; Defendant's Exhibit B: lines 22-24, page 66; lines 14-18, page 68; lines 16-20, page 69; lines 19-21, page 70; Defendant's Exhibit F: lines 8-25, page 11; and lines 1-7, page 13; and Plaintiff's Exhibit C: lines 12-14, 18-25 page 47; lines 1-9, page 48; lines 21-25, page 56; lines 1-4, page 57; lines 17-21, page 58; and lines 16-18, page 76).[62]

#### (a)  The Plaintiffs Have Failed to Raise Fact Issues as to Their Assault Claims

In the deposition excerpts cited in plaintiffs' initial response to Defendant's MSJ, Sharon Smith McLaurin testified that after the motorcycle riders followed them out into the parking lot,

---

[61]Plaintiffs' Response, Docket Entry No. 54, pp. 6-7.

[62]Plaintiffs' Supplemental Response, Docket Entry No. 58, p. 10.

one of the motorcycle riders pulled back his vest to show them that
he had a knife:

    Q.   Did you see the knife?

    A.   Yes, sir.

    Q.   Where was the knife?

    A.   On his side.

    Q.   On his side?

    A.   Yes, sir.

    Q.   Was he holding it in his hand?

    A.   No, sir.

    Q.   Where was it?

    A.   In a holster.

    Q.   In a holster?

    A.   Yes, sir.

    Q.   So it was in a holster that appeared to be somehow
       attached to his waist of his pants somehow?

    A.   Yes, sir.[63]

Cottrell McLaurin also testified that after the motorcycle
riders followed them out into the parking lot, one of the
motorcycle riders pulled back his vest to show them that he had a
knife:

    Q.   There's how many of them?

    A.   About six or eight of them.  And I noticed, like I
       said, one of the guys just kept brandishing his

---

[63]Sharon Smith McLaurin Deposition Vol. 1, Exhibit A to
Defendant's MSJ, Docket Entry No. 51-1, p. 80:22-81:11.

> little knife, trying -- he didn't pull it out of
> his holster, he just kept showing it, showing it.
>
> Q.   In what way was he showing it?
>
> A.   He put --
>
> Q.   Why don't you stand up and show us how that --
>
> A.   He had his motorcycle vest on.  So whatever he was
>      doing, he would just do it like that, cover it back
>      up, do it like that, cover it back up, trying to
>      intimidate somebody?[64]

Cottrell McLaurin also testified that there were no heated words

between the plaintiffs and the motorcycle riders:

> Q.   Let's talk about the seven to eight minute period
>      where you were outside.  And so there was -- would
>      it be fair to say that there were some heated words
>      exchanged back and forth?
>
> A.   No.   It wasn't any heated words between the
>      motorcycle gang and ourselves. . . .
>
> Q.   So what was discussed for seven to eight minutes?
>
> A.   They felt like we shouldn't have been sitting in
>      that booth.  They felt like we had disrespected the
>      waitress, which we didn't, because nobody did
>      anything to disrespect her to that effect.   The
>      only people that were disrespected was us.   The
>      harass was us.[65]

---

[64]Cottrell McLaurin Deposition Vol. 1, Exhibit B to Defendant's
MSJ, Docket Entry No. 51-2, pp. 66: 20-67:6.  See also Cottrell
McLaurin Deposition Vol. 2, Exhibit F to Defendant's MSJ, Docket
Entry No. 51-6, pp. 11:8-13:7.

[65]Cottrell McLaurin Deposition Vol. 1, Exhibit B to Defendant's
MSJ, Docket Entry No. 51-2, pp. 68:19-69:6.  See also id. at 70:
19-25 (". . . we was  talking, the gang was talking to us.  Y'all
shouldn't  have  been  in  there.    Y'all  shouldn't  have  been
disrespecting her like that.  Come to find out we didn't know one
of the members was her dad.  Didn't know that at all.  So he felt
like somebody was mistreating his daughter, which in essence we
wasn't . . .").

Toni Lewis Kelly also testified that one of the motorcycle riders pulled back his vest to show the plaintiffs that he was "packing" a knife,[66] that another one of the motorcycle riders was "just standing out there,"[67] that showing the knife was "a threat to . . . . life."[68]  Toni Lewis Kelly testified that the knife was at all times in its sheath:

> Q.   And did he ever pull out the knife from his --
>
> A.   No.  He just pulled his jacket back to show us where he had the -- the knife in the holster.
>
> Q.   It was in a holster?  Was it on his belt?
>
> A.   It was -- you know, it was -- yeah, it was on his -- in his belt.[69]

The Plaintiffs argue that an assault occurred when James Campbell revealed that he had a knife.  Because the knife was at all times in a holster on James Campbell's belt, and there is no evidence regarding the size or sharpness of the knife's blade, or the physical proximity of James Campbell to the plaintiffs, plaintiffs have failed to cite any evidence from which a reasonable fact-finder could conclude that seeing a holstered knife caused

---

[66]Kelly Deposition, Exhibit C to Defendant's MSJ, Docket Entry No. 51-3, p. 47:14.

[67]Id. at 47:25.

[68]Id. at 47:25-48:1.  See also id. at 57:3-7 ("[A]t that point when we showed the knife, you know, it was basic a fear for my life.  I'm -- you know, I just want to get away from there at this point, you know.  So we got in the car and we get everybody in the car and we're, like, trying to get of there.").

[69]Id. at 76:16-21.

them to suffer threat of imminent bodily injury.  See Soto v. State
of Texas, 864 S.W.2d 687, 691 (Tex. App. — Houston [14th Dist.]
1993, pet. ref'd) (citing Blain v. State, 647 S.W.2d 293, 294 (Tex.
Crim. App. 1983) (en banc) (where there is no actual injury alleged
to have been caused by a knife, a showing must be made of the
knife's capacity to cause death or serious bodily injury)).
Plaintiffs' contention that they were assaulted is belied by
Cottrell McLaurin's testimony that there were no heated words
between the plaintiffs and the motorcyclists, and that the two
groups were talking.  Moreover, since the only knife the plaintiffs
saw was worn by one James Campbell, not by an employee or
representative of the Waffle House, plaintiffs have failed to cite
any evidence from which a reasonable fact-finder could conclude
that any threat they experienced is attributable to defendant
Waffle House.

The theory of plaintiffs' assault claim against Waffle House
is that Brittany Campbell, the waitress who refused to serve them,
instigated an assault by assisting and encouraging the tortfeasors
-- namely her father and his motorcycle friends -- to follow the
plaintiffs outside into the parking lot for the purpose of
assaulting and falsely imprisoning them.[70]  But plaintiffs only

---

[70]Plaintiffs' Supplemental Response, Docket Entry No. 58, p. 11
("[I]t is Plaintiffs' contention considering all of the evidence
before, during, and after the offenses that Brittany Campbell
assisted and encouraged the tortfeasors, namely her father and his
friends (the motorcycle club/gang in the adjacent booth) in the
assault and false imprisonment of Plaintiffs.").

speculate that Brittany Campbell instigated her father and his friends to follow them outside. Toni Lewis Kelly acknowledged that "we just assumed that she [i.e., Brittany Campbell] had to have told them something to kind of pump their heads up to make them feel the way they were feeling when they walked outside."[71]

Because plaintiffs have failed to present any evidence from which a reasonable fact-finder could conclude that an employee, representative, or customer of defendant Waffle House intentionally, knowingly, or recklessly threatened plaintiffs with imminent bodily injury, or that Waffle House employee Brittany Campbell instigated an assault upon the plaintiffs, the court concludes that defendant is entitled to summary judgment on the plaintiffs' assault claims.

> (b)   The Plaintiffs Have Failed to Raise Fact Issues as to Their Battery Claims

Plaintiffs testified that no Waffle House employee, representative, or customer touched them. Plaintiff Sharon Smith McLaurin testified:

> Q.   Did Brittany ever physically touch you or anyone in your party?
>
> A.   No, sir.
>
> Q.   What about any Waffle House employee?
>
> A.   No, sir.
>
> Q.   Never touched you or anyone in your party?

---

[71]Kelly Deposition, Exhibit C to Defendant's MSJ, Docket Entry No. 51-3, p. 56:14-16.

A.    No, sir.

Q.    Bandidos?   Did they ever touch you?

A.    No, sir.

Q.    Anyone in your party?

A.    No, sir.[72]

Plaintiff Toni Lewis Kelly similarly testified:

Q.    Okay.   And did anybody from Waffle House ever
      physically touch you?

A.    No.

Q.    Did anybody in the Bandidos or the motorcycle
      people ever touch you?

A.    No.[73]

Accordingly, plaintiffs are unable to establish battery as a matter
of law, and defendant is entitled to summary judgment on their
claims for battery.  See Fisher v. Carrousel Motor Hotel, Inc., 424
S.W.2d 627, 629 (Tex. 1967) (battery requires an offensive
touching); Price v. Short, 931 S.W.2d 677, 687 (Tex. App. — Dallas
1996, no pet.) ("Battery requires only an offensive touching.").

D.    **Intentional Infliction of Emotional Distress**

      Plaintiffs allege that

      Waffle House, Inc., by and through its employee Brittany
      Campbell intentionally or recklessly insulted and
      embarrassed Plaintiffs by her speech and actions in front
      of other patrons and Defendant Bandidos Motorcycle Club.

---

[72]Sharon Smith McLaurin Deposition Vol. 1, Exhibit A to
Defendant's MSJ, Docket Entry No. 51-1, pp. 90:25-91:10.

[73]Kelly Deposition, Exhibit C to Defendant's MSJ, Docket Entry
No. 51-3, pp. 76:22-77:2.

Defendant Waffle House, Inc.'s conduct was extreme and outrageous and proximately caused Plaintiffs severe emotional distress.  Plaintiffs suffered damages for which Plaintiffs herein sue.[74]

Waffle House argues that it is entitled to summary judgment on plaintiffs' claims for intentional infliction of emotional distress because no Waffle House employee subjected the plaintiffs to conduct that was extreme and outrageous, and because plaintiffs have failed to offer evidence that any of the plaintiffs suffered severe distress as a result of a Waffle House employee's conduct.[75]

### 1.   Applicable Law

To prevail on a claim for intentional infliction of emotional distress, Texas law requires plaintiffs to establish that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme or outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe.  Dean v. Ford Motor Credit Co., 885 F.2d 300, 306 (5th Cir. 1989).  Conduct is considered to be extreme and outrageous if it surpasses "all bounds of decency" such that it is "utterly intolerable in a civilized community."  Id.  See also GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 611 (Tex. 1999).  "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to

---

[74]Plaintiffs' Third Amended Complaint, Docket Entry No. 16, p. 5 ¶ 18.

[75]Defendant's MSJ, Docket Entry No. 51, pp. 16-20.

the level of extreme and outrageous conduct." <u>Texas Farm Bureau</u>
<u>Mutual Insurance Cos. v. Sears</u>, 84 S.W.3d 604, 610 (Tex. 2002)
(citing <u>Bruce</u>, 998 S.W.2d at 612).   The fact that conduct is
intentional, malicious, or even criminal does not, standing alone,
mean it is extreme and outrageous conduct.  <u>Brewerton v. Dalrymple</u>,
997 S.W.2d 212, 215 (Tex. 1999).   Whether a defendant's conduct may
reasonably be regarded as extreme and outrageous is a decision for
the court.  <u>McKethan v. Texas Farm Bureau</u>, 996 F.2d 734, 742 (5th
Cir. 1993) (citing <u>Wornick Co. v. Casas</u>, 856 S.W.2d 732, 734 (Tex.
1993)).  "Only if reasonable minds may differ does the fact finder
determine whether, in a particular case, the conduct was
sufficiently extreme and outrageous to result in liability."
<u>Behringer v. Behringer</u>, 884 S.W.2d 839, 843 (Tex. App. 1994, writ
denied).  "Emotional distress includes all highly unpleasant mental
reactions such as embarrassment, fright, horror, grief, shame,
humiliation, and worry."  <u>Bruce</u>, 998 S.W.2d at 618.

    2.   <u>Application of the Law to the Undisputed Facts</u>

In response to Waffle House's motion for summary judgment,
plaintiffs argue that

> [t]he motion makes it apparent that Waffle House is not
> of the opinion that Brittany Campbell's conduct i.e.,
> refusing service, taunting, colluding with violent
> persons (See Exhibit D 59:22-23, 25; and 60:1, 10-13),
> false imprisoning, and confronting and assaulting
> Plaintiffs is extreme and outrageous behavior —
> Plaintiffs have the opposite opinion.[76]

---

[76]Plaintiffs' Response, Docket Entry No. 54, p. 6.

-44-

Exhibit D cited by plaintiffs is the testimony of Robert Haynes
explaining the difference between the motorcycle club for
firefighters to which he belonged, and other motorcycle clubs such
as the Bandidos whose members were "not always nice guys."[77]
Plaintiffs also argue that

> [l]ooking at Brittany Campbell's actions as a whole over
> the course of Plaintiffs' time at the Waffle House, one
> can see that her behavior went beyond mere insulting
> behavior.  She started out with rude behavior but her
> behavior escalated to a point where Plaintiffs were
> assaulted in the parking lot and fearing for their
> lives—that course of conduct is tantamount to extreme and
> outrageous conduct.[78]

Plaintiffs' intentional infliction of emotional distress claim
is based on the theory that Brittany Campbell treated them rudely
inside the restaurant, and then instigated her father and his
friends to follow them outside the restaurant into the parking lot
for the purpose of assaulting and falsely imprisoning them.[79]  Rude
behavior, insults, and annoyances cannot as a matter of law rise to
the level of extreme and outrageous conduct, <u>Bruce</u>, 998 S.W.2d at
612.  And for the reasons stated in § IV.B-C, above, the court has
already concluded that plaintiffs have failed to cite any evidence

---

[77]Robert Haynes Deposition, Exhibit D to Defendant's MSJ,
Docket No. 51-4, pp. 59:25-60:1.  <u>See also</u> <u>id.</u> at 60:10-13 (stating
that Bandidos can be a problem).

[78]Plaintiffs' Supplemental Response, Docket Entry No. 58, p. 12.

[79]<u>Id.</u> at 11 ("[I]t is Plaintiffs' contention considering all
of the evidence before, during, and after the offenses that
Brittany Campbell assisted and encouraged the tortfeasors, namely
her father and his friends (the motorcycle club/gang in the
adjacent booth) in the assault and false imprisonment of
Plaintiffs.").

from which a reasonable fact-finder could conclude that they were falsely imprisoned, assaulted, or battered, or that Brittany Campbell instigated her father and his friends to follow the plaintiffs outside to falsely imprison, assault, or batter them. The court therefore concludes that plaintiffs have failed to present evidence from which a reasonable fact-finder could conclude that Brittany Campbell subjected the plaintiffs to conduct that was extreme and outrageous.

Plaintiffs have also failed to cite evidence from which a reasonable fact-finder could conclude that any distress they suffered as a result of Brittany Campbell's conduct was severe. One of the plaintiffs, Cottrell McLaurin, expressly denies any symptoms associated with Posttraumatic stress disorder related to the Waffle House events.[80]   Although the other plaintiffs have offered testimony that they suffered embarrassment and humiliation the night of the events at issue, and that they have since suffered from depression or anxiety, they have not offered any evidence of the severity of their embarrassment, humiliation, depression, or anxiety.   Moreover, the plaintiffs did not seek medical care for emotional distress until after commencement of this suit, over two years after the events at issue transpired.[81]

---

[80]Cottrell McLaurin Deposition Vol. 1, Exhibit B to Defendant's MSJ, Docket Entry No. 51-2, pp. 51:11-12, 51:22-23, 59:7, 64:15-19, 86:11-12, and Cottrell McLaurin Deposition Vol. 2, Exhibit F to Defendant's MSJ, Docket Entry No. 51-6, p. 14:1-3.

[81]See Sharon Smith McLaurin Deposition Vol. 2, Exhibit E to Defendant's MSJ, Docket Entry No. 51-5, p. 7:15-21 ("Q. And at the (continued...)

Because plaintiffs have failed to present evidence from which a reasonable fact-finder could conclude that Brittany Campbell's conduct was extreme and outrageous, or any emotional distress they suffered was severe, defendant Waffle House is entitled to summary judgment on plaintiffs' claims for intentional infliction of emotional distress.

## E.   Negligent Hiring, Supervision, Training, and Retention

Plaintiffs allege that

> Waffle House, Inc., did not properly screen, evaluate, investigate, or take any reasonable steps to determine whether Brittany Campbell was unfit, incompetent, or a danger to third parties. Defendant, Waffle House, Inc., knew or should have known that Brittany Campbell was unfit and could foresee that Brittany Campbell would come in contact with Plaintiffs, creating a risk of danger to Plaintiffs. Defendant, Waffle House, Inc.'s failure to exercise reasonable care in the hiring, supervision, training and retention of Brittany Campbell was the proximate cause of damages to Plaintiffs for which Plaintiffs hereby sue.[82]

---

[81](...continued) time you hadn't seen any professionals, psychologist -- psychologists, psychiatrists, or any other mental health professionals as of December, 2014, correct?  A. Correct."); Cottrell McLaurin Deposition Vol. 2, Exhibit F to Defendant's MSJ, Docket Entry No. 51-6, p. 9:14-16 ("Have you seen any other psychologists or mental health professionals? A. Well, my attorney recommended."); Kelly Deposition, Exhibit C to Defendant's MSJ, Docket Entry No. 55-3, p. 71:2-10 ("Q. Did you see any medical providers, any psychiatrists, psychologists for your sleeplessness? A. No, I didn't.  Q. Did you see any medical providers for your crying, the crying or anxiety that you felt?  A. No, I didn't. Q. Did you talk to any counselors, anybody because of -- to -- to help you deal with your anxiety?  A. No.").

[82]Plaintiffs' Third Amended Complaint, Docket Entry No. 16, p. 6 ¶ 20.

Waffle House argues that it is entitled to summary judgment on plaintiffs' claims for negligent hiring, supervision, training, and retention because plaintiffs have pleaded only a negligent hiring cause of action, not a cause of action for negligent supervision, training, or retention; because Waffle House cannot be held liable for negligent hiring, supervision, training, or retention when no Waffle House employee committed an actionable tort; and because plaintiffs have failed to present any evidence that the alleged risk that caused the employment to be negligent was the same risk that proximately caused plaintiffs' alleged injuries.[83]

### 1.   Applicable Law

To establish negligence, a party must produce evidence that (1) another party owed it a legal duty, (2) the other party breached that duty, and (3) damages were proximately caused by that breach.  See Lee Lewis Construction, Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001).  An employer owes a duty to the general public to ascertain the qualifications and competence of the employees it hires, especially when the employees are engaged in occupations that require skill or experience and that could be hazardous to the safety of others.  Dangerfield v. Ormsby, 264 S.W.3d 904, 912 (Tex. App. — Fort Worth 2008, no pet.).  In the context of negligent training, the evidence must establish that (1) the employer owed the plaintiff a legal duty to train competent

---

[83]Defendant's MSJ, Docket Entry No. 51, pp. 24-26.

employees, (2) the employer breached that duty, and (3) the breach proximately caused the plaintiff's injury.  Wal-Mart Stores, Inc. v. Aguilera-Sanchez, No. 04-02-00458-CV, 2003 WL 21338174, at *5 (Tex. App. — San Antonio June 11, 2003, pet. denied).  A plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so proximately caused his injuries.  Dangerfield, 264 S.W.3d at 912.

Some courts have held that negligent training is not a proximate cause of the plaintiff's injury unless the plaintiff presents evidence that the improperly trained employee committed an actionable tort recognized under common law.  The rationale is that an employer "is not liable for negligence, no matter how egregious, unless the negligence causes a legally compensable injury." Gonzales v. Willis, 995 S.W.2d 729, 739 (Tex. App. — San Antonio 1999,  no  pet.),  overruled  in  part  on  other  grounds  by Hoffmann-La Roche Inc. v. Zeltwanger, 144 S.W.3d 438, 447-48 (Tex. 2004).  In addressing a negligent hiring claim, the Supreme Court of Texas stated that "such a claim requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices." Wansey v. Hole, 379 S.W.3d 246, 247 (Tex. 2012).  But, in so holding, the court made clear that it was simply enforcing the general rule that requires plaintiffs to establish that the defendant's negligence proximately caused their damages.  See id. at 248 ("Because [the plaintiff] presented no evidence of harm caused by an employee

hired pursuant to [the defendant]'s hiring policies, we hold she did not present legally sufficient evidence of damages proximately caused by [the defendant]'s alleged negligence.").

Proximate cause requires proof of both cause in fact and foreseeability. See Excel Corp. v. Apodaca, 81 S.W.3d 817, 820 (Tex. 2002). Cause in fact further requires proof that the act or omission was a substantial factor in causing the injury without which the harm would not have occurred. See Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995). To be a substantial factor, the act or omission must have such an effect in producing the harm as to lead reasonable people to regard it as a cause. See Union Pump Co. v. Allbritton, 898 S.W.2d 773, 776 (Tex. 1995). Foreseeability requires that the negligent actor anticipated, or should have anticipated, the danger his or her negligence created. El Chico Corp. v. Poole, 732 S.W.2d 306, 313 (Tex. 1987). The exact injury need not be foreseen; foreseeability is satisfied when the injury is of a general character that could reasonably be anticipated. Harrison, 70 S.W.3d at 785.

2.   Application of the Law to the Undisputed Facts

Plaintiffs assert that genuine issues of material fact exist as to Waffle House's exercise of reasonable care (1) in hiring of Brittany Campbell as she had a prior arrest and had been placed on probation,[84]  (2) training Brittany Campbell and other employees as

---

[84]Plaintiffs' Response, Docket Entry No. 54, p. 7.

she and other employees failed to follow proper Waffle House procedures,[85] (3) failing to have an appropriate supervisor on duty to reprimand Brittany Campbell,[86] and (4) ratifying Brittany Campbell's tortious conduct by retaining her.[87]   Missing from plaintiffs' briefing is any evidence that Brittany Campbell or any other Waffle House employee has an arrest record, or that knowledge of such records would have made Brittany Campbell's treatment of plaintiffs foreseeable.  Also missing from plaintiffs' briefing is any evidence of how Brittany Campbell and any other employees were improperly trained, or how their improper training injured the plaintiffs.  Asserting that "[n]egligent supervision does not have to be in the course and scope if there is a separate, legally compensable tort,"[88] plaintiffs argue that "[t]he underlying torts herein are assault, false imprisonment, and intentional infliction of emotional distress."[89]  Plaintiffs argue that "[a] supervisor on duty with the appropriate authority would have been able to reprimand Brittany Campbell for her actions toward Plaintiffs in accordance with established Waffle House policy and, in doing so,

---

[85]Id. at 8.

[86]Id.

[87]Id. at 9.

[88]Plaintiffs' Supplemental Response, Docket Entry No. 58, p. 13.

[89]Id.

avoid the ensuing assault and false imprisonment."[90] These arguments have no merit because for the reasons stated in §§ IV.B-D, above, the court has already concluded that defendant Waffle House is entitled to summary judgment on the claims that the plaintiffs have asserted for these intentional torts, i.e., false imprisonment, assault, battery, and intentional infliction of emotional distress.

Because plaintiffs have failed to cite evidence from which a reasonable fact-finder could conclude that defendant Waffle House had any negligent hiring, training, supervising, or retention practices or policies, or that Waffle House's hiring, training, supervising, and retention policies were the proximate cause of any injury to the plaintiffs, the court concludes that defendant Waffle House is entitled to summary judgment on plaintiffs' claims for negligently hiring, training, supervising, or retaining Brittany Campbell or any other employee.

## F.   Declaratory Relief

Asserting that "[a]n actual controversy exists between Plaintiffs and Defendants as to whether Defendant Waffle House's unequal treatment of Plaintiffs violates the Civil Rights Act of 1964, 42 U.S.C.A. § 2000a et. seq., or any applicable State

---

[90]Id. at 14.

statute,"[91]   plaintiffs   allege   that   "[i]t   is   necessary   and appropriate for the Court to issue a declaration of rights in this case in order that the parties can have a clear statement as to their respective rights, and so that future litigation over similar incidents can be avoided."[92]

"When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal Declaratory Judgment Act." Bell v. Bank of America Home Loan Servicing LP, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012).   The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."   28 U.S.C. § 2201(a).   The federal Declaratory Judgment Act does not create a substantive cause of action but, instead, is merely a procedural vehicle that allows a party to obtain an early adjudication   of   an   actual   controversy   arising   under   other substantive law.   See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 57 S. Ct. 461, 463 (1937); Lowe v. Ingalls Shipbuilding,

---

[91]Plaintiffs' Third Amended Complaint, Docket Entry No. 16, p. 7 ¶ 24.

[92]Id. ¶ 25.

723 F.2d 1173, 1178 (5th Cir. 1984).   In a declaratory judgment action, "[b]ased on the facts alleged, there must be a substantial and continuing controversy between two adverse parties." Bauer v. Texas, 341 F.3d 352, 358 (5th Cir. 2003).   For the reasons explained above, the court has concluded that plaintiffs have failed to present evidence capable of raising a genuine issue of material fact for trial on any of their substantive claims. Therefore, plaintiffs have no continuing controversy so their request for declaratory judgment must fail.

## V. Conclusions

For the reasons stated above, the court concludes that plaintiffs have failed to present any evidence from which a reasonable fact-finder could conclude that Waffle House discriminated against plaintiffs in public accommodation in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; that Waffle House falsely imprisoned, assaulted, or battered plaintiffs; that Waffle House intentionally inflicted emotional distress on the plaintiffs; that Waffle House was negligent in hiring, supervising, training, or retaining Brittany Campbell; or that injunctive or declaratory relief is required to prevent Waffle House from engaging in conduct that is either tortious or violative of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a.   Accordingly, Defendant Waffle House, Inc.'s Motion for Summary Judgment (Docket Entry No. 51) is **GRANTED** and

Defendant Waffle House, Inc.'s Motion to Supplement its Motion for Summary Judgment to add Exhibits K-1a through K-2b (Docket Entry No. 53) is **GRANTED**.

    **SIGNED** at Houston, Texas, on this 13th day of April, 2016.

                                              SIM LAKE
           UNITED STATES DISTRICT JUDGE